[No. B008072. Second Dist., Div. Three. Oct. 8, 1985.]

RONALD DAVID CURTIS, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES, Defendant and Appellant.

### COUNSEL

De Witt W. Clinton, County Counsel, and Rafael A. Ongkeko, Senior Deputy County Counsel, for Defendant and Appellant.

John Stanford Todd, City Attorney (Lakewood), and Todd & Siegel as Amici Curiae on behalf of Defendant and Appellant.

Hugh R. Manes, Carol A. Watson and Manes & Watson for Plaintiff and Respondent.

## Opinion

### ARABIAN, J.—

### Introduction

Defendant and appellant the County of Los Angeles (County) was granted a summary judgment (Code Civ. Proc., § 437c) against plaintiff and respondent Ronald David Curtis (plaintiff) on the ground that plaintiff's complaint under the California Tort Claims Act (Gov. Code, § 810 et seq.) presented no triable issue of fact and was without merit with regard to County. This appeal is from that portion of the summary judgment which denied County's request for an award of defense costs in the form of attorney's fees (Code Civ. Proc., § 1038). We reverse and remand to the trial court.

### Issue

Did the Legislature intend Code of Civil Procedure section 1038 to apply only to actions filed in bad faith and without reasonable cause and not to actions initially filed in good faith but later maintained in bad faith and without reasonable cause?

### Statement of Facts

Plaintiff suffered personal injuries when the motorcycle he was riding skidded in sand or gravel on a street in the City of Palos Verdes Estates (City). Plaintiff presented claims for damages to County and City (Gov. Code, § 910 et seq.). His claims were denied and, on February 26, 1982, he filed a complaint for damages in the superior court, naming both County and City as defendants. By agreement, County was not required to answer the complaint nor make an appearance in the action.

On or about August 10, 1982, County forwarded declarations to plaintiff's attorney, which disclosed that County did not own, control, design, construct, inspect, repair nor maintain the property in question, and requested that the action be dismissed as to County. The same request was repeated on July 18, 1983, September 13, 1983, and October 19, 1983.

However, instead of dismissing the complaint as to County, plaintiff required County to attend an October 6, 1983, mandatory trial setting confer-

ence at which the trial date was set for September 10, 1984. At that conference, plaintiff's counsel indicated he was still investigating possible County involvement and that he would advise County within a "couple of months" regarding its request for dismissal.

Finally, on February 17, 1984, just seven months before the scheduled trial date, County noticed a motion for summary judgment (Code Civ. Proc., § 437c). The moving papers supporting the unopposed motion disclosed that plaintiff's case against County was totally without merit, as County had no involvement whatever with the accident site which was located in the City of Palos Verdes Estates.

In its motion, County requested defense costs in the sum of $560.00 for its reasonable attorney's fees, pursuant to Code of Civil Procedure section 1038. Section 1038 allows the award of such fees in a proceeding under the Tort Claims Act (Gov. Code, § 810 et seq.) when it is concluded by a summary judgment or nonsuit and where the fact finder determines the action was not "brought in good faith and with reasonable cause." The motion was heard on March 21, 1984. Plaintiff filed no opposition to the motion and presented no evidence. Instead, plaintiff's counsel argued that he joined County because he was not sure whether the accident site was in County's jurisdiction.[1]

The trial court concluded section 1038 applied only to actions originally *filed* in bad faith, not to those whose continued maintenance was in bad faith;[2] determined the action had been filed in good faith, and, accordingly, denied County's request for defense costs. Thus, the summary judgment in favor of County orders that no attorney's fees be awarded County pursuant to Code of Civil Procedure section 1038.[3]

---

[1]Plaintiff's counsel argued: "I think . . . the Summary Judgment is probably appropriate. I would oppose fees, because of course, originally when we filed this Complaint . . . there was an accident in the area . . . [which] could have been County property. We were not sure; so we joined the County."

[2]"THE COURT: My problem with 1038 is that it says, the court shall determine whether or not the plaintiff *brought* the proceedings with reasonable cause and good faith belief that there was a justiciable controversy, which warrants the filing of the complaint.

"I think that, if we take the statute at its words . . ., all [plaintiff] has to show is that he was in good faith when he filed the complaint.

"It doesn't say anything about good faith in *maintaining* the action, and *continuing* to pursue it after he finds out he doesn't have a cause of action; nor does it impose any duty of discovery on him to find out if he has an action." (Italics added.)

[3]The summary judgment in favor of County contains the following findings:

"The court further finds that if plaintiff *brought* the proceeding with reasonable cause and in the good faith belief there was a justiciable controversy under the facts and law which warranted the filing of the complaint, Code of Civil Procedure § 1038 is inapplicable even if *continued maintenance* of a complaint is done without reasonable cause and in bad faith." (Italics added.)

## DISCUSSION

■ In this case of first impression we are asked to honor the promise impliedly offered by our Supreme Court in *City of Long Beach* v. *Bozek* (1983) 33 Cal.3d 727 [190 Cal.Rptr. 918, 661 P.2d 1072], adopting the opinion at (1982) 31 Cal.3d 527 [183 Cal.Rptr. 86, 645 P.2d 137]. In *Bozek,* the Supreme Court held that governmental entities may not bring malicious prosecution actions against those who have previously sued them without success, but noted public entities may nonetheless have a substantial interest in recovering all expenses incurred in defending the lawsuit. (31 Cal.3d at p. 531.) The *Bozek* court, observing that existing statutory remedies[4] protect public entities against bad faith litigation, concluded that "the best course is to defer to the legislatively provided remedy." (31 Cal.3d at p. 538.)[5]

Section 1038 of the Code of Civil Procedure was enacted two years before the *Bozek* decision. It provides public entities with a protective remedy for defending against unmeritorious litigation as follows:

"(a) In any civil proceeding under the California Tort Claims Act or for indemnity or contribution in any civil action, the fact finder, upon motion of the defendant or cross-defendant, shall, at the time of the granting of any summary judgment or nonsuit dismissing the moving party other than the plaintiff, petitioner, cross-complainant, or intervenor, determine whether or not the plaintiff, petitioner, cross-complainant, or intervenor *brought* the proceeding with reasonable cause and in the good faith belief that there was a justiciable controversy under the facts and law which warranted the filing of the complaint, petition, cross-complaint, or complaint in intervention. If the fact finder should determine that the proceeding was not *brought* in good faith and with reasonable cause, an additional issue shall be decided as to the defense costs reasonably and necessarily incurred by the party or parties opposing the proceeding, and the court shall render judgment in favor of that party in the amount of all reasonable and necessary defense costs.

---

[4]The *Bozek* court specifically cited Code of Civil Procedure section 128.5, subdivision (a) (authorizing an award of litigation expenses, including attorney's fees, when incurred as a result of tactics or actions which are frivolous or cause unnecessary delay), and Code of Civil Procedure section 1021.7 (authorizing an award of attorney's fees in actions for damages arising out of the performance of a police officer's duties, or libel or slander, if not filed or maintained in good faith and with reasonable cause). (31 Cal.3d at p. 537.)

[5]In a strong dissent in *Bozek,* Justice Kaus, who supported the attempt of the City of Long Beach to sue for malicious prosecution, recognized an inconsistency between the majority's "absolute privilege" against malicious prosecution and its recognition of the validity of statutes which allow damages similar to those sought in malicious prosecution cases. (*City of Long Beach* v. *Bozek, supra,* 31 Cal.3d at p. 542; see also Note, *City of Long Beach* v. *Bozek: An Absolute Right to Sue the Government?* (1983) 71 Cal.L.Rev. 1258.)

"(b) 'Defense costs,' as used in this section, shall include reasonable attorney's fees, expert witness fees, the cost of services of experts, advisers, and consultants in defense of the proceeding, and where reasonably and necessarily incurred in defending the proceeding. The court may direct a separate trial at the conclusion of the proceeding on the issue of defense costs.

"(c) This section shall be applicable only on motion made prior to the discharge of the jury or entry of judgment, and any party requesting the relief pursuant to this section waives any right to seek damages for malicious prosecution. Failure to make such motion shall not be deemed a waiver of the right to pursue a malicious prosecution action.

"(d) This section shall only apply if the defendant or cross-defendant has made a motion for summary judgment or nonsuit and the motion is granted." (Italics added.)

County contends that the phrase in section 1038 "not brought in good faith and with reasonable cause" was meant by the Legislature to include actions not *maintained* or *prosecuted* in good faith and with reasonable cause.

Plaintiff argues that the phrase is applicable only to the state of mind of the plaintiff at the time the action is *filed* or *commenced.* In support of his position, plaintiff argues that one year after section 1038 was enacted, the Legislature enacted Code of Civil Procedure section 1021.7 (Stats. 1981, ch. 980, § 1, p. 3806) which provided for the recovery of reasonable attorney's fees upon a judicial finding that a police misconduct suit for damages "was not *filed* or *maintained* in good faith and with reasonable cause." (Italics added.)[6]

Citing *People* v. *Kuhn* (1963) 216 Cal.App.2d 695, 699 [31 Cal.Rptr. 253], plaintiff urges that inasmuch as both statutes are contained in the same chapter of the Code of Civil Procedure (tit. XIV, ch. 6 [which pertains to costs in the trial and reviewing courts]), the Legislature's use of the word "maintained" in section 1021.7 and its omission of the word from section 1038, indicates that it had a different legislative intent when it enacted the two statutes.

---

[6]Code of Civil Procedure section 1021.7 provides, in pertinent part: "In any action for damages arising out of the performance of a peace officer's duties, brought against a peace officer . . . or against a public entity employing a peace officer . . . the court may, in its discretion, award reasonable attorney's fees to the defendant or defendants as part of the costs, upon a finding by the court that the action was not filed or maintained in good faith and with reasonable cause."

Our duty then is to interpret the word "brought" as it is used in section 1038, subdivision (a). The trial court equated the words "brought a proceeding" with the filing of the complaint, rather than with all stages of the proceeding until its conclusion by summary judgment or nonsuit.

Black's Law Dictionary (4th ed. rev. 1957) states that the word "brought" is the past tense of "bring." (*Id.*, at p. 242.) It defines "bring suit" thusly: "To 'bring' an action or suit has a settled customary meaning at law, and refers to the initiation of legal proceedings in a suit. [Citation.] A suit is 'brought' at the time it is commenced. [Citations.] 'Brought' and 'commenced' in statutes of limitations are commonly deemed to have been used interchangeably. [Citation.] . . . Under a statute providing that no action shall be 'brought or maintained', 'brought' applies to actions not yet instituted. [Citation.] 'Institute and prosecute' and 'bring suit' are synonomous. [Citation.]" (*Id.*, at p. 240.)

The word "prosecute" which appears in the last phrase of the definition is defined in Black's, at page 1385, as: "To follow up; carry on an action or other judicial proceeding. . . . To 'prosecute' an action is not merely to commence it, but includes following it to an ultimate conclusion."

Inasmuch as Black's Dictionary defines the words "bring suit" in such manner that it supports both parties' positions as to the meaning of the word "brought" in section 1038, we next turn to accepted rules of statutory construction to aid us in interpreting the statute.

■ We begin with the fundamental rule that we must ascertain the intent of the Legislature so that we may effectuate the purpose of the law. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Jackson* v. *City of San Diego* (1981) 121 Cal.App.3d 579, 587 [175 Cal.Rptr. 395].) "When a statute is theoretically capable of more than one construction we are obliged to choose that which most comports with the intent of the Legislature." (*Southern Cal. Gas Co.* v. *Public Utilities Com.* (1979) 24 Cal.3d 653, 658 [156 Cal.Rptr. 733, 596 P.2d 1149]; *Moyer* v. *Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d at p. 232.) It is well settled that a statute is to be construed in such a way as to render it reasonable, fair and harmonious with its manifest legislative purposes and, therefore, the literal meaning of its words must give way to avoid harsh results and mischievous or absurd consequences. (*County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29, 36 [148 Cal.Rptr. 584, 583 P.2d 109].)

■ In enacting the act which added section 1038 to the Code of Civil Procedure (Assem. Bill No. 3214, introduced by Assemblyman Patrick J.

Nolan on Mar. 11, 1980, which became Stats. 1980, ch. 1209, § 1, pp. 4088-4089), the Legislature appears to have intended to discourage frivolous lawsuits against governmental agencies. For instance, an analysis prepared for the Senate Committee on the Judiciary stated: "The purpose of the bill is to allow public entities to recover the cost of defending frivolous lawsuits brought against them." A Bill Digest of the Assembly Committee on the Judiciary stated: "Proponents contend that this bill will curb frivolous lawsuits because it will require plaintiffs who bring such actions to pay for some of the expense incurred by blameless defendants."

■ Statements in Legislative committee reports concerning statutory objects and purposes which are in accord with a reasonable interpretation of the statute serve as legitimate aids in determining Legislative intent. (*Southern Cal. Gas Co.* v. *Public Utilities Com.*, *supra*, 24 Cal.3d 653, 659.) It will be presumed that the Legislature adopted the proposed legislation with the intent and meaning expressed in committee reports. (*California Teachers' Assn.* v. *Governing Board* (1983) 141 Cal.App.3d 606, 613 [190 Cal.Rptr. 453]; *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 427 [173 Cal.Rptr. 917].)

■ The above-quoted statements which appear in the committee reports disclose that the purpose of Assembly Bill No. 3214, which became Code of Civil Procedure section 1038, was to allow public entities to recover costs incurred in defending frivolous lawsuits. If a frivolous lawsuit was only *filed* or *commenced* but not *maintained* or *prosecuted*, clearly there would be little or no cost involved in defending against it. Thus, it appears the Legislature intended the word "brought" to include *continuing* the action in bad faith and without reasonable cause.

Other considerations also lead us to the conclusion that the interpretation of the statute urged by County is the correct one.

Subdivision (c) of section 1038 provides that any party requesting defense costs under the statute waives any right to seek damages for malicious prosecution and that failure to seek such relief shall not be deemed a waiver of the right to pursue a *malicious prosecution* action. The waiver provisions in subdivision (c) show a recognition by the Legislature that the relief afforded by section 1038 is so similar to a *malicious prosecution* cause of action that an aggrieved party can only seek redress by one method or the other, but not both.

A civil malicious prosecution cause of action is described in the Restatement Second of Torts in a chapter denominated "Wrongful Use of Civil

Proceedings." Section 674 of that chapter sets forth the "General Principle" as follows:

"One who takes an active part in the initiation, *continuation* or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if [¶] (a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and [¶] (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought." (Italics added.)

Comment c to section 674 of the Restatement Second of Torts states: "*Continuation of civil proceedings.* As in the case of criminal prosecutions (see § 655),[7] one who *continues* a civil proceeding that has properly been begun or one who takes an active part in its *continuation* for an improper purpose after he has learned that there is no probable cause for the proceeding becomes liable as if he had then initiated the proceeding . . . ." (Italics added.)

Both the Restatement Second of Torts (vol. 5 appen., § 674, com. c., reporter's notes at p. 439) and Prosser and Keeton on Torts (5th ed. 1984) at page 872, footnote 20, cite *Laney* v. *Glidden Co.* (1940) 239 Ala. 396 [194 So. 849], a civil malicious prosecution case, for the proposition that "[a] suit for malicious prosecution may lie, not only for the commencement of the original proceeding, but for its *continuance* as well." (*Id.*, at p. 851, italics added.)

Inasmuch as the Legislature provided in subdivision (c) of section 1038 that a request for relief pursuant to the section operates as a waiver of a malicious prosecution action, we presume the Legislature intended that section 1038 would provide a means of redress for acts similar to those for which damages are sought in a civil malicious prosecution action.

■ "It is fundamental that legislation should be construed so as to harmonize its various elements without doing violence to its language or

---

[7]See *Bulkley* v. *Klein* (1962) 206 Cal.App.2d 742, 748 [23 Cal.Rptr. 855], citing Prosser on Torts (2d ed. 1955) at page 646, which lists as one of the essential elements of a criminal malicious prosecution cause of action: "1. A criminal proceeding instituted or *continued* by the defendant against the plaintiff. . . ." (Italics added.) This element is repeated in the most recent edition of the book, Prosser and Keeton on Torts (5th ed. 1984), at page 871. (See also Prosser and Keeton on Torts, *supra*, p. 872, fn. 20, citing *Killen* v. *Olson* (Fla. 1952) 59 So.2d 524, 525 [instigation or continuance of prosecution is sufficient to satisfy the prerequisite to a charge of malicious prosecution] and *Lampos* v. *Bazar, Inc.* (1974) 270 Or. 256 [527 P.2d 376, 386] [one who continues criminal prosecution after learning of exculpatory facts may incur liability].)

spirit. Wherever possible, potentially conflicting provisions should be reconciled in order to carry out the overriding legislative purpose as gleaned from a reading of the entire act. [Citation.] A construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless. [Citation.]" (*Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 788 [176 Cal.Rptr. 104, 632 P.2d 217].)

In *Kisbey* v. *State of California* (1984) 36 Cal.3d 415 [204 Cal.Rptr. 428, 682 P.2d 1093], the Supreme Court was faced with a factual situation which did not fall within the technical terms of an immunity statute. The court held the immunity applied however, when it ascertained the legislative purpose of the statute was to immunize public defendants from an "entire spectrum" of private citizen injuries. (*Id.*, at p. 419.) The court reasoned: "It would plainly violate the legislative intent if particular words of the statute . . . were given such technical meanings that a case fell between the cracks . . . ." (*Ibid.*) Here, too, we believe the Legislature intended to address the "entire spectrum" of bad faith litigation against public entities when it enacted section 1038.

Accordingly, we hold that the word "brought" encompasses not only the filing of an action, but also its *continued maintenance.* Our holding is consistent with and in accord with *Cal. S. R.R. Co.* v. *S. P. R.R. Co.* (1884) 65 Cal. 394 [4 P. 344], where our Supreme Court held, over one hundred years ago, that the requirement that an eminent domain action be "brought" in the county in which the property was situated applied not only to the filing of the action but also to its *continued maintenance.*

Therefore, upon remand, the trial court must determine (1) whether plaintiff continued to maintain this action in "good faith and with reasonable cause" (Code Civ. Proc., § 1038) and (2) if not, the amount of defense costs "reasonably and necessarily incurred" by County (*ibid.*).

CONCLUSION

We have endeavored not to make a fortress out of the dictionary but rather to accomplish our interpretive duty to the end that the wisdom of the framers be upheld and to avoid a manifestly absurd result.

"If ever we are justified in reading a statute, not narrowly as through a keyhole, but in the broad light of the evils it aimed at and the good it hoped for, it is here."[8]

---

[8]Jackson, J., *U. S.* ex rel. *Marcus* v. *Hess* (1943) 317 U.S. 537, 557 [87 L.Ed. 443, 456, 63 S.Ct. 379].

However, we suggest that the Legislature amend section 1038 in such manner that its language will precisely reflect what we have perceived was its intent when it enacted the section.

### DISPOSITION

We reverse that portion of the summary judgment which denied County defense costs in the form of attorney's fees and remand the cause to the trial court for further proceedings consistent with the views expressed in this opinion.

Lui, Acting P. J., and Danielson, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 30, 1985.