Filed 3/7/14  White v. Corinthian Colleges CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CANDICE WHITE,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>CORINTHIAN COLLEGES, INC. et al.,<br><br>      Defendants and Respondents. | B245377<br><br>(Los Angeles County<br>Super. Ct. No. BC445426) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Affirmed.

Law Office of Michael J. Curls, Michael J. Curls and Nichelle D. Jones for Plaintiff and Appellant.

Payne & Fears, Jeffrey K. Brown, Erik M. Andersen and Alejandro G. Ruiz for Defendants and Respondents.

Plaintiff Candice White appeals from a judgment and post-judgment orders entered following a jury verdict in favor of her former employer, defendant Corinthian Colleges, Inc., and her supervisor, defendant Otilia Manzo. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Appellant, an African American, filed a complaint against Corinthian Colleges, Inc. and Manzo, alleging causes of action for racial discrimination, retaliation, and harassment, all in violation of the Fair Employment and Housing Act. (Gov. Code §§ 12940 et seq. ("FEHA")); failure to pay overtime compensation; assault; and battery. The factual underpinnings of the FEHA causes of action as alleged in the complaint were that Manzo interfered with appellant's work performance "by providing disproportionate training, leads and incentives" to non-African American employees; denied appellant sick days and subjected her to discipline and reprimand "more often than non-African American employees;" routinely used derogatory terms such as "nigger" in appellant's presence in the workplace; referred to appellant as "nappy;" and hovered over appellant in her workspace and ridiculed her attire.

On the first day of trial, the trial court ordered the issues of liability and damages to be bifurcated. The court also granted two of respondents' motions in limine, to exclude testimony regarding alleged harassment of Corinthian College employees hired after appellant ceased working at the college, and to exclude the testimony of another employee concerning her claims of retaliation against a supervisor other than appellant's supervisor after she complained about a poor performance review she had received from her supervisor. The appellate record reveals no written opposition to these motions.

At the conclusion of appellant's case-in-chief, respondents orally moved for non-suit as to all causes of action. The trial court granted the motion as to the causes of action

---

[1] The parties did not engage the services of a court reporter to transcribe the proceedings below, and this court was not presented with any authorized substitute record, such as an Agreed or Settled Statement. (See Cal. Rules of Court, rules 8.134 and 8.137.) Consequently, our recitation of the facts is limited to those contained in the complaint and other documents filed with the court, as well as the court's minute orders.

2

for racial discrimination and assault, and otherwise denied the motion.  According to the court's minute order, appellant concurred in the granting of the motion as to these two causes of action.

The jury returned a special verdict in favor of respondents on the remaining causes of action.  Appellant moved for a new trial and for judgment notwithstanding the verdict.  After a hearing, the trial court denied both motions.

Following entry of judgment, respondents filed a Memorandum of Costs.  Appellant then moved to tax certain costs and submitted a declaration of hardship.  Respondent filed opposition thereto.  After a hearing on the matter, the Motion to Tax costs was granted in part and denied in part.  The court granted the motion as to $19,761.27.  The remaining costs were awarded jointly and severally against appellant and her counsel.

Appellant filed a notice of appeal from the judgment and the denial of her motions for a new trial, for judgment notwithstanding the verdict and for the partial denial of her Motion to Tax Costs.

DISCUSSION

A "cardinal rule of appellate review [is] that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown." (*Foust v. San Jose Constr. Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)  Since error is never presumed, "[a]ll intendments and presumptions are indulged to support" a judgment or order of the trial court, even for matters as to which the record is silent.  (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.)  Accordingly, "an appellant "'must affirmatively show error by an adequate record. . . .  [Citation.]'" (*Ibid.*)  This burden remains with the appellant at all times.  (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.)

In the present case the court proceedings were not transcribed, nor was an Agreed Statement or a Settled Statement of the lower court proceedings procured.  When an appellant fails to provide a record of the oral proceedings in the court below, the appeal is considered to be a "judgment roll appeal." (*Schwartz v. Labow* (2008) 164 Cal.App.4th

3

417, 429, fn. 11.) The appellate court's powers are limited on a judgment roll appeal, and "'[u]nless error appears on the face of the record, all intendments will be in support of the judgment. [Citation.]'" (*Ibid.*)

Based upon the absence of a reporter's transcript or an Agreed or Settled Statement of the oral proceedings at trial, and appellant's consequent failure provide any record citations in support of her factual summary of the proceedings, respondents moved to dismiss the appeal. As will appear below, respondents' motion is, in many respects, well-taken. We have, however, opted to address the merits of appellant's arguments to the extent possible based upon the record before us. Accordingly, we deny respondents' Motion to Dismiss.

1. *Bifurcation of the issue of liability from the issue of damages*

On the first day of trial the court ordered that the trial be bifurcated into liability and damages phases.[2] No written opposition to the order of bifurcation was filed, nor is any record presented that either party opposed its issuance. Because no error appears on the face of the record, the bifurcation order provides no basis for reversing the judgment. (See *Schwartz v. Labow*, *supra*, 164 Cal.App.4th at p. 429.)[3]

---

[2] It cannot be determined from the record presented whether the court ordered bifurcation on its own motion or upon the oral motion of a party. The failure to object by a party would prevent raising this issue on appeal. (See *People v. Saunders* (1993) 5 Cal.4th 580, 589-590; *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 857.)

[3] Although the record does not state the trial court's findings, the implied findings are those identified by Code of Civil Procedure section 598, which provides that "[t]he court, on its own motion, may make an order of bifurcation at any time" when "the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted thereby." (Code Civ. Proc., § 598.) Here it must be presumed that the trial court found in favor of bifurcation on each and every factor, and that the evidence supports all of these implied findings and any subsidiary facts. (See *Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.)

2. *The granting of respondent's 1st and 5th motions in limine*

Respondents sought to exclude as witnesses certain Corinthian College employees, arguing that their testimony would be irrelevant, hearsay, and inadmissible character evidence, and that, pursuant to Evidence Code section 352, its probative value would be substantially outweighed by the likelihood that its admission would waste time, confuse the issues and mislead the jury. The trial court granted the motions, which rulings appellant challenges on appeal.

The record before this court on this issue is limited to the trial court's minutes indicating that the two motions were granted, along with respondent's papers filed in support of the motions. No written opposition to the motions was filed by appellant, and there is no record of the oral proceedings before the court, prior to the issuance of its rulings. Therefore, there is no record that appellant even opposed the granting of these motions. This alone is sufficient reason to affirm the trial court's rulings. (See *People v. Saunders, supra,* 5 Cal.4th at pp. 589-590; *Schwartz v. Labow, supra,* at p. 429, fn.11.) Even an assumption that appellant opposed the motions would not change the outcome. The granting of motions in limine is reviewed for an abuse of discretion. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) If there are no findings in the record contrary to the challenged ruling, the appellate court must assume that the trial court relied on any implied findings that would support its ruling. (*Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856, 860.)

3**.** *The granting of the motion for non-suit as to the first and fifth causes of action*

Respondents moved for nonsuit on appellant's claims for racial discrimination and assault. In its minute order granting the partial non-suit, the trial court described the motion as "a request to make a correction for clerical error as to the minutes of 9/13/12 in the trial held in this case," and stated that appellant's counsel concurred in the ruling. Appellant contends that the trial court erred in granting non-suit on her first and fifth causes of action.

The granting of a motion for non-suit is warranted when, disregarding conflicting evidence, giving plaintiff's evidence all the value to which it is legally entitled, and indulging in every legitimate inference that may be drawn from the evidence, the trial court determines that there is no substantial evidence sufficient to support a verdict in favor of plaintiff. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1580.)

As noted above, the court's minutes indicate that appellant concurred in the granting of the non-suit as to the causes of action for racial discrimination and assault. Appellant may not claim that the court erred in granting a partial non-suit if she invited the purported error by agreeing to it. (See *R&B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 350; *Jackson v. Superior Court* (1937) 10 Cal.2d 350, 358.) Additionally, appellant's failure to provide the entire record once again precludes her challenge to the granting of the non-suit. (*Hodges v. Mark* (1996) 49 Cal.App.4th 651, 657 [appellate court not able to reach merits of an appeal of a judgment of non-suit, because "appellant's omission of the reporter's transcript precludes appellant from raising any evidentiary issues on appeal"].)

4. *Limitation of appellant's ability to call defense witnesses in her case in chief*

Appellant claims, without any citation to the record, that the trial court improperly prohibited her from eliciting any evidence from respondents' witnesses Lynn Westerfield and Michael Nielson, called by appellant under Evidence Code section 776, to bolster her case-in-chief. Evidentiary rulings are reviewed under the abuse of discretion standard. Appellant must also demonstrate that any purported errors prejudiced her. (Code Civ. Proc., § 475; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

The record presented to this reviewing court does not support appellant's argument that the court prohibited her from calling the named witnesses. To the contrary, the record reflects that appellant did call Westerfield and Nielson. The record also does not indicate that appellant was limited in her questioning of these witnesses. Where no record of any refused questions or offers of proof is provided, "[t]he error, if any, was

6

entirely abstract and no prejudice is shown to have resulted." (*Estate of McCollum* (1943) 59 Cal.App.2d 744, 752.) Given the state of the record presented on appeal, appellant has failed to demonstrate that (a) the trial court limited her questioning of the aforesaid witnesses; (b) such limitation was improper; and (c) she suffered prejudice as a result thereof. (See *Federal Home Loan Mort. Corp. v. La Conchita Ranch Co., supra*, 68 Cal.App.4th at p. 860; Code Civ. Proc. § 475; Evid. Code § 354, subd. (a).)

5. *The special verdict form*

Appellant claims that the special verdict form presented to the jury was incorrect as a matter of law. A party who fails to object to a special verdict form ordinarily waives any objection to the form. (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 530; *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 130-131.) Appellant in the present case not only did not object to the form of the special verdict, but specifically approved it. If the special verdict form was indeed incorrect, this certainly would constitute invited error. (*Jackson v. Superior Court, supra,* 10 Cal.2d at p. 358; *R&B Auto Center, Inc., supra*, at p. 350. ) In view of our holding that appellant waived any error in the form of the special verdict, we need not and do not address the remaining issues raised by appellant regarding the correctness of the special verdict form.

6. *Inconsistencies in the jury's completion of the special verdict form*

Appellant contends that the findings made by the jury in the special verdict form are inconsistent, claiming that the answer to question 5(b) conflicts with the answer to question 6. We see no conflict.

The jury completed the section of the special verdict form regarding appellant's racial harassment claim as follows:

"4) Did Otilia Manzo subject Plaintiff to unwanted racially harassing conduct directed at her or others?

" X Yes ___ No

"**If your answer to question 4 is 'yes,' then answer question 5. If you answered 'no,' then do not answer questions 5 through 7, and go directly to question 8.**

"5) a) Was the unwanted racially harassing conduct directed at Plaintiff, if any, severe or pervasive? (If there was none directed at her, personally, leave the 'yes' and 'no' blank.)

"___ Yes _X_ No

" b) Was the unwanted racially harassing conduct directed at others, if any, severe or pervasive? (If there was none directed at others, leave the 'yes' and 'no' blank.)

" _X_ Yes ___ No

"**If your answer to question 5(a) or 5(b) is 'yes,' then answer question 6. If you answered 'no' or left 5(a) or 5(b) blank, then do not answer questions 6 and 7, and go directly to question 8.**

"6. Would a reasonable African American employee in Plaintiff's circumstances have considered her work environment to be hostile or abusive due to racial harassment?

"___ Yes _X_ No

"**If your answer to question 6 is 'yes,' then answer question 7. If you answered "no,' then do not answer questions 7, and go directly to question 8.**

"7. Did Plaintiff consider her work environment to be hostile or abusive?

"___ Yes ___ No"

Thus, the jury found that Manzo engaged in severe and pervasive racially harassing conduct directed at others in appellant's presence, but that a reasonable person of appellant's race and in her circumstances would not have considered her work environment to be hostile or abusive due to racial harassment. Appellant maintains that "if Manzo subjected plaintiff to racially offensive conduct that the jury found to be severe and pervasive, plaintiff worked in an abusive and hostile work environment which would constitute actionable harassment against Manzo. As such, the jury's verdict in favor of

8

Manzo and Corinthian and against Plaintiff is not supported by the facts or law in this case."

Under FEHA, "'the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." [Citation.] . . . [T]hat inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. . . . The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensibility to social context, will enable courts and juries to distinguish between simple teasing or roughhousing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.' (*Oncale v. Sundowner Offshore Services, Inc.* (1998) 523 U.S. 75, 81–82, 118 S.Ct. 998, 140 L.Ed.2d 201; see also *Beyda v. City of Los Angeles* (1998) 65 Cal.App.4th 511, 517–518.)" (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462.) It is for this reason that the special verdict included question 6, "Would a reasonable African American employee in Plaintiff's circumstances have considered her work environment to be hostile or abusive due to racial harassment?"

Because we have no record of the evidence before the jury, we have no ability to assess whether that evidence supports the jury's determination that Manzo's conduct directed at a third party, though severe or pervasive as to the third party, did not create a hostile work environment for plaintiff. Consequently, we cannot say that there was not sufficient evidence to support the jury's findings. (*Kidron v. Movie Acquisition Corporation, supra,* 40 Cal.App.4th at p. 1581.)

9

7. *Motion for judgment notwithstanding the verdict*

Based upon the jury's answers to the special verdict, appellant filed a Motion for a Judgment Notwithstanding the Verdict ("JNOV"), arguing that the defense verdict was not supported by the facts or law. The court denied the motion, which ruling appellant challenges on appeal.

A motion for a JNOV may be made by either party against whom the verdict is rendered, or by the court on its own motion. (Code of Civ. Proc. § 629.) "'"'"The scope of appellate review of a trial court's denial of a JNOV is to determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's conclusion and where so found to uphold the trial court's denial of the motion.'" [Citation.]'" (*Dell'Oca v. Bank of New York Trust Co., N.A.* (2008) 159 Cal.App.4th 531, 554-555.) This standard compels that we affirm the trial court's decision. "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising any argument as to the sufficiency of the evidence. [Citations.]" (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

In the present case, appellant has failed to produce a reporter's transcript or an authorized substitute for same, which precludes her from arguing that the verdict was not supported by substantial evidence.


8. *Motion for a new trial*

Appellant moved for a new trial based on multiple grounds, which the trial court denied. Appellant cites this ruling as reversible error. We consider each of the several grounds for the new trial motion below.

10

a.  Misconduct of Respondents' Counsel

Appellant claims, without any citation to the record, that respondents' counsel made misrepresentations to the court and the jury during closing arguments to the effect that appellant's "inaction" was the reason she had not returned to work, and that she could return to work whenever she wanted to, a representation appellant claims was not true.  The record provided fails to reveal any such alleged misrepresentation.  The failure to provide a complete record of the trial, including arguments of counsel, precludes the consideration of any claims that improper statements were made to the jury.[4]

b.  Newly Acquired Evidence

Appellant, once again without any citation to the record, claims that she is entitled to a new trial on the grounds of newly discovered evidence.  The trial court's determination as to the granting of a new trial will not be disturbed unless an abuse of discretion is clearly shown.  (*Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 138.)  The record shows that appellant filed her Motion for New Trial with supporting papers, respondents filed their response thereto, and after a hearing thereon the trial court denied the motion on all grounds, necessarily including the ground of "Newly Discovered Evidence."  Because we have no transcript to indicate what was said by counsel and the court at the hearing on appellant's motion, and there is nothing in the papers filed by the parties which reveal what the court said, appellant is unable to demonstrate error.  We note that the trial court obviously did not accept appellant's novel theory that the subsequent termination of her employment, sometime after the jury returned its verdict, demonstrated that her employment was actually terminated prior to the jury's verdict.

c.  The Absence of a Court Reporter

Appellant contends that "Given the restrictive scope of review of some issues presented in the instant appeal," the court committed prejudicial error by failing to notify

_____

[4] It also impossible to determine if appellant objected when the alleged statement was made, or whether appellant asked the trial court to admonish the jury.

11

and require the parties to comply with California Rules of Court ("CRC"), rule 2.956(b)(3). This argument is without merit.

The law, at most, entitles a party to notice regarding the availability of court reporters and the opportunity to retain one at its own expense. (See Gov. Code § 68086, subd. (a)(5).) CRC, rule 2.956(b)(1) provides: "Each trial court must adopt and post in the clerk's office a local policy enumerating the departments in which the services of official court reporters are normally available, and the departments in which the services of official reporters are not normally available during regular court hours . . . ." CRC, rule 2.956(b)(2) provides in relevant part: "The court must publish its policy in a newspaper if one is published in the county. . . ." Appellant refers to neither of these rules, but cites CRC, rule 2.956(b)(3) which states: "Unless the court's policy states that all courtrooms normally have the services of official court reporters available for civil trials, the court must require that each party file a statement before the trial date indicating whether the party requests the presence of an official court reporter. If a party requests the presence of an official court reporter and it appears that none will be available, the clerk must notify the party of that fact as soon as possible before the trial."

Appellant was given four months' notice that a court reporter would not be provided by the court, and that the proceedings would not be reported unless arrangements were made by one of the parties with an outside reporting agency, in the form of:

1. A General Order issued on May 1, 2012;[5]

2. A Notice to Attorneys announcing the General Order;

3. A written policy regarding court reporters posted in the Clerk's Office of the Los Angeles Superior Court ("LASC"), published in a legal newspaper, posted on the

_____

[5] Pursuant to respondents' request, we take judicial notice of actions of the Los Angeles Superior Court as set forth above, notifying counsel that court reporters are no longer provided by the court in civil actions. All other requests for judicial notice are denied.

LASC website, and posted on the daily docket sheets for courtroom calendars in the LASC.

Further, appellant had an affirmative duty to ensure a court reporter was present for any proceeding which might be pertinent to an anticipated appeal. (*In re Christina P.* (1985) 175 Cal.App.3d 115, 129.) "Failure to attend to this duty can be tantamount to a waiver of the right to appeal." (*Ibid.*)

Nothing in the record suggests that appellant attempted to procure a reporter. To the contrary, the fact that the matter proceeded through trial without a court reporter, coupled with a lack of a record demonstrating that appellant requested a reporter or objected to the lack of a reporter, necessitates an implied finding that appellant waived having the proceedings reported. (See also *Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co., supra,* at p. 860.) Appellant can demonstrate no affirmative error by the trial court in the record. Appellant cannot transform her own willing failures into grounds for a reversal of the judgment.[6]

9. *Motion to tax costs*

a. The Order Awarding Costs

Respondents filed a Memorandum of Costs seeking to recover $54,667.39 in costs. Appellant moved to tax costs, seeking to disallow $42,090.67 of respondents' costs, for a total cost award of $12,576.72. After a hearing, the court ordered appellant and her counsel, jointly and severally, to pay respondents $34,906.12 in costs. Appellant challenges that order on appeal.

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) Absent a specific contrary statute, "the court has no discretion to deny costs to the prevailing party." (*Vons Companies, Inc. v. Lyle Parks, Jr., Inc.* (2009) 177

---

[6] As noted above, appellant also had the option of securing a Settled Statement in lieu of a court reporter.

13

Cal.App.4th 823, 833.) We review the cost award for an abuse of discretion. (*Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1556-1557.)

Appellant argues that the case of *Villanueva v. City of Colton* (2008) 160 Cal.App.4th, 1188,1203, which provides that in a FEHA action the court must consider a plaintiff's ability to pay before awarding attorney's fees to a defendant, should apply to an award of costs as well. She cites in support of her position *Knight v. Hayward* (2005) 132 Cal.App.4th 121, 135-136, which holds that a court may consider equitable factors such as undue financial hardship and ability to pay in exercising its discretion to award costs to a prevailing defendant in a FEHA action.

Here, after the hearing on appellant's motion to tax costs and respondents' motion for attorney's fees, the court issued a minute order covering both motions. The court disallowed $19,761.27 of respondents' requested costs, consisting of certain expert and reporter fees in the sum of $9,891.25, and $9,870.02 for lodging, meals, travel charges by respondents' "exhibit company." It is clear from the court's ruling that it gave serious consideration to appellant's request to tax costs, based on its order reducing the requested costs by the sum of $19,761.27. Had the court concluded that all of the costs should have been taxed based on appellant's alleged hardship, it could have easily done so. Nothing in the record suggests that the trial court failed to consider appellant's assertion of indigence. Instead, the absence of a complete record requires this court to conclusively presume that the trial court considered appellant's arguments and found them to be unpersuasive, unworthy of credit, or unsupported by the facts. (See *Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co., supra,* at p. 860; *Construction Financial v. Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 179; and *Ehrler v. Ehrler*, *supra*, 126 Cal.App.3d at p. 154.) Therefore, appellant has failed to establish that, in granting in part and denying in part her Motion to Tax Costs, the trial court abused its discretion.

b. Challenges to Specific Items Awarded to Respondents as Costs

(i) Appellant challenges the specific costs awarded to respondents representing fees for filing a joint stipulation, jury instructions, and special verdict forms. However,

14

these fees all fall under the category of filings, motions, and jury fees.  (Code Civ. Proc., § 1033.5, subd. (a)(1).)  Nothing in the statute limits fees to "motions," as contended by appellant.  To the contrary, the language of the statute is in the disjunctive, treating "filing" and "motion" fees as separate recoverable costs.

(ii) Appellant challenges $2,679.44 in deposition costs and witness fees.  She claims that certain deposition costs should be taxed because the parties reached an agreement (denied by respondents) to use the deponent's testimony from another lawsuit in the present case.  However, with nothing in the record to support appellant's disputed contention, the court must proceed on the basis that there was no such agreement.[7]  Absent, such an agreement, a party may not seek to apportion deposition or witness fees between two actions just because the testimony is or may be used in both actions.  (*Howard v. American Nat. Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 540-541.)  This ensures that a prevailing party in one action can recover the total costs to which it is entitled without also having to prevail in the second action.  (*Id.* at p. 541.)

(iii) Appellant claims that costs for service of process for certain depositions are not recoverable because the costs for photocopying documents are not listed in the statute.  However, in the trial court respondents successfully established that none of the challenged costs was for photocopying.  Respondents also presented evidence that the costs claimed were limited to the actual cost of serving the subpoenas.  As a result, this issue was, at best, a factual dispute resolved by the trial court in its sound discretion.  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)  ""When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to

---

[7] In the absence of a record of the proceedings, it must be conclusively presumed from the court's denial of this request to tax the challenged deposition costs that the court rejected appellant's factual argument regarding an alleged agreement between the parties to use the depositions in both actions.  Further, it must also be conclusively presumed that whatever evidence the trial court reviewed supported this finding.  (See *Federal Home Loan Mort. Corp. v. La Conchita Ranch Co., supra,* 68 Cal.App.4th at p. 860*; Construction Financial v. Perlite Plastering Co., supra,* 53 Cal.App.4th at p. 179*; Ehrler v. Ehrler, supra,* 126 Cal.App.3d at p. 154.)

15

substitute its decision for that of the trial court.'" [Citations.]" (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339.)

(iv) Appellant claims the trial court improperly awarded the sum of $24,997.18[8] for the photocopying of trial exhibits, based on her assertion that "[t]his cost is excessive, cannot possibly be reasonable for litigation and is not supported by any supporting information." The record, however, reveals that the costs sought were supported by evidence. The complete absence of any transcripts of the trial also requires a finding that the final costs awarded for respondents' multimedia presentation were both reasonably necessary and reasonable in amount, given the fact that the trial judge had the ability to observe the entire trial proceedings. (See *Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co., supra* at p. 860.) No evidence was presented to show that the trial court abused its discretion in awarding $15,127.16 for these litigation expenses. (See *Seever v. Copley Press, Inc., supra,* at pp. 1556-1557.)

(v) Appellant claims that the trial court erred in awarding respondents their mediation costs. Specifically, appellant argues that "mediation is not a cost expressly authorized by statute."

While mediation is not specifically enumerated in Code of Civil Procedure section 1033.5, subdivision (a), the cost may be allowable under section 1033.5, subdivision (c)(4). (*Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1207-1209 [holding that the "legislation does not foreclose an award of mediation expenses as costs" and that "when an unsuccessful mediation has been court ordered, reasonably necessary expenses incident thereto may, in the sound discretion of the trial court, be awarded after trial to a prevailing party"].) The appellate record does not reflect that the trial court ordered the parties to mediation. However, appellant does not contest the fact that the parties were ordered to mediation, and indeed did participate in a failed mediation. Further, there is

---

[8]Although respondents' cost bill sought the sum of $24,997.18 in costs for models, blow-ups and photocopies of exhibits, the trial court taxed this cost, reducing the amount requested by $9,870.02. Thus the amount awarded for this item was $15,127.16.

16

no evidence presented to show that the trial court abused its discretion in awarding the costs of mediation.

    c. Joint and Several Liability for Cost Award

Appellant challenges the trial court's award of costs jointly and severally against her and her attorney of record. Appellant contends that the award of costs against appellant's counsel was in effect an order of sanctions, there being no authority for awarding regular costs against a non-party to a lawsuit, and respondent does not dispute that contention. Appellant contends the issuance of this order violated her counsel's right to due process of law since he was not placed on notice that respondents were seeking an order that he be jointly responsible for court costs, as a sanction, and was not given an opportunity to be heard on that issue.

Before this reviewing court can consider this issue on its merits, two procedural issues must first be resolved.

(i) Appellant's Standing to Raise the Issue

Parties have standing to appeal only if they are legally "aggrieved" by the appealable judgment or order. (Code Civ. Proc., § 902.) Under Code of Civil Procedure, section 902, to be sufficiently "aggrieved" to have standing to appeal, a person's rights or interests must be injuriously affected by the judgment or order, and those rights or interests must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment or order. (*El Dorado Irr. Dist. v. State Water Resources Bd.* (2006) 142 Cal.App.4th 937, 977.) Section 902 is strictly applied by the reviewing courts. (*Hensley v. Hensley* (1987) 190 Cal.App.3d 895, 898.)

In the present case appellant has not demonstrated how she was aggrieved by the fact that her counsel has been made jointly and severally liable for respondents' costs, that is, how she was injured by the fact that the judgment provides that her counsel is also responsible for respondents' costs. She therefore has no standing to challenge the court's order on appeal.

17

(ii) Appellant's Counsel's Failure To File a Notice of Appeal

*Calhoun v. Vallejo City Unified School Dist.* (1993) 20 Cal.App.4th 39, addressed the question of counsel's ability to challenge a sanctions order, having failed to file a notice of appeal. The Court of Appeal there held that it did not have jurisdiction to consider the attorney's appeal: "[T]here are two reasons we lack jurisdiction to review the sanction ruling. First, the purported appeal is not by the sanctioned attorney, Michael Calhoun, but by the plaintiff George Calhoun. Subdivision (k) of section 904.1 authorizes an appeal of a sanction ruling by the party against whom the sanctions were imposed. [Citation omitted.] Thus, any right of appeal was vested in Michael, not George. Had Michael included himself as an additional appellant in George's notice of appeal, we could have liberally construed the notice of appeal in favor of its sufficiency (Cal. Rules of Court, rule 1(a); *Moyal v. Lanphear* (1989) 208 Cal.App.3d 491, 497), but Michael did not do so. Absent any attempted appeal by the sanctioned party, the sanction ruling is not presently reviewable." (*Id.,* at p. 42.) Therefore, since appellant has no standing to challenge the award of costs against her trial counsel and since no notice of appeal was ever filed by counsel for appellant as to the "cost sanction," we cannot consider this claim.

Citing *Doyle v. Superior Court* (1991) 226 Cal.App.3d 1355, 1358, appellant contends that the imposition of costs against counsel for plaintiff was in fact a sanction against counsel, which order for sanctions was made without notice to counsel in violation of his right to due process of law. Relying on *People v. Anderson* (2001) 25 Cal.4th 543, 592, fn.17 and *People v. Williams* (1997) 16 Cal.4th 153, 199, 250, respondents' position is that even if there was a due process violation, that claim was waived and cannot be reviewed on appeal because there is no record that it was raised before the trial court. Since error is never presumed, the reviewing court must presume that appellant's counsel waived any due process objection. (*Null v. City of Los Angeles*, *supra,* 206 Cal.App.3d at p. 1532.) Therefore, even if appellant had standing to raise this issue and/or her counsel had filed a timely notice of appeal, the end result would be the same.

18

DISPOSITION

The judgment and post-judgment orders of the trial court are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MINK, J.[*]


We concur:


TURNER, P. J.


MOSK, J.

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.